We're going to move now to case number 3, 22-2570 Frazier v. DMI, and we're going to the court. May it please the court, my name is Daniel Zemel. On behalf of Plaintiff Tamara Frazier. This is a peculiar case where the district judge appears to have made up his mind early and prevented plaintiff from obtaining and presenting relevant critical evidence. First, the court prevented plaintiff from obtaining third-party evidence from Equifax. Mr. Zemel, why are these two different cases? And why wasn't the civil cover sheet in the second one marked to reflect they were related at the very least? The civil cover sheet certainly should have reflected that. It sure should have. Yes, Your Honor. So why are there two separate cases? The reason there are two separate cases is the Equifax action is a class action. The difference between a class action in this context is when you engage in a class action with a credit reporting agency, we spend months and months and months and several motions to compel because the credit reporting agency's position is we can't figure anything out, we can't search anything. What happens is the plaintiff needs to take many technical depositions then go to the court and articulate why Equifax can do what we want it to do. If we would have combined these cases into one, there would have been a circus going on with Equifax's search capabilities on the class issues which have nothing to do with Dover Mule. What difference does that make? The difference is... I mean, I know it's inconvenient, but I view this as you can't, it's hard in one case to say it's both of your faults, particularly here, right? The error was either DMI's fault or Equifax's fault. It's much easier to make that in two separate cases where you can say it's Equifax's fault and it's DMI's fault. I think that's what the district judge thought you were trying to do. The district judge presented what we did was as gamesmanship, but frankly, there's no federal rule that required us to put these cases together. We should have in the civil coverage sheet identified them. That was an office error, but... An office error? My office should have done that, Your Honor. You should have done that? Yes. I didn't see your name on it, actually, but I thought I saw somebody else's counsel. Frank Dennis? My local counsel. Ah, okay. The... I don't, well, you're saying that the case against Equifax was a class action, something that I had not noticed in the briefs, and I would, is that a point that you made to Judge Feinerman? I was not at the oral argument. Well, yes, Your Honor, I'm sorry. There were two different oral arguments where we presented the issues to Judge Feinerman, and one of them, I was there and I advised the court of that, and the other one, my colleague was there, and she articulated that she didn't know why my office chose to do it that way. I'm the lead plaintiff, and that's the reason. Well, it's understandable why the district court might not have been terribly sympathetic under the circumstances if you're not telling them about this, but let's get to the, let's assume that you were entitled in some way to put the Equifax evidence in front of Judge Feinerman. I was, I kept looking in your district court submissions and in what you sent to our court, in this case, for what Equifax actually said, and I didn't find it. That's correct. I saw a statement that it would offer significant insight, and even now, we don't have the equivalent of an offer of proof. That's correct, Your Honor. So why should we bother with this? I sought to introduce it into the record, and the court prevented me from doing that. There was nothing more I could do. We specifically filed a motion to supplement the record with it. At the time we made the motion, it was the day after the deposition, we hadn't received the transcript yet, and I... Even today, we don't know what Equifax said. When we filed... It's not in this, it's not in our record, it's not in the district court record. Had we put it into the record of this appeal, that would be improper, because this... Agreed. What prevented you from attaching the deposition transcript to a motion to supplement? The motion to supplement was made the day after the deposition. I understand. Yes. Well, look, your time is limited. I don't want to waste your time on this issue, but it's hard for me to see a reversible error here on this record. Well, it's an abuse of discretion for the court to prevent plaintiff from supplementing the record with the key evidence. The only thing that we... And we have no idea whether that was prejudicial. The only thing the court can consider whether that was prejudicial was what I filed in my motion, which the court can consider. Significant insight. Well, it says in my paperwork, the Equifax's testimony specifically articulated Dovenmuehl's role in creating and verifying the false and misleading report. Let's... Let me try it from a different angle, Mr. Frazier, or Mr. Zemel, sorry. Could you point us to a communication from this defendant, Dovenmuehl, to Equifax that was false or misleading? Yes, Your Honor. Every ACDV correspondence from Dovenmuehl to the credit reporting agency contained false and misleading information, and we did present that evidence below. I have it in front of me. What's false and misleading about it? I have all of them, I believe. Good, Your Honor. First, I want to focus on... I just happen to have 812, but they're all relatively the same. There are two components of error in the ACDV documents. These are the blue documents for Your Honor's advice. First of all... Which date are you looking at? On the right-hand side, it says 10-18-2020. Okay, I've got it. Okay. On this part of the document, it says the pay rate, and the pay rate there is 3. This segment of the report is the current report, is the current status of the accounts. Let me ask you on that. Is it your position that that pay rate code 3 is inaccurate and misleading, first, accurate but misleading, second, or neither? I want to focus, to answer your question, on the second page of the ACDV. This is critical. This is the historical page. It lists from 2020 to 2013. This is where the code 3, which indicates 90 days late, which Plaintiff was in 2016. This is where the 3 code belongs. Not on this page, which is the current status code. So the answer to my question would be what? Inaccurate and misleading, or accurate and misleading? The 3 here is patently inaccurate and misleading. The 3 here would be correct. If it was in the proper month that Ms. Fraser was, in fact, 90 days late, in 2016, or 2015. I'm looking at, in essence, the original data here at the very top, and then the response. Yes. Right? Yes. Is there anything about the response that's inaccurate? Yes. The dashes in the response indicate to Equifax that what's in the request grid should continue reporting. In this request grid that you have in front of you, there is a 3 in several months of 2019 and 2018, and the corresponding response grid is the dash. That's saying to Equifax, keep it there the way it's going, which is verifying the false information, which results in the creditors. I understand that, given what they've done is eliminate all of the delinquent payments from 2016 to 2020. Right? That's what those dashes mean. That's not correct, Your Honor. That's what Equifax's testimony explains. That's the testimony of the court deprived plaintiff from obtaining and presenting. This is the evidence that we don't have in the record. This is the evidence we don't have in the record. Correct. This is the basis of my motion to supplement, where I specifically state, the Equifax states they created and verified it. So presumably, defendant was getting these requests from other credit reporting agencies too, right? That's not correct. It is only on the Equifax report that this information was falsely reporting, as we showed in the credit report that the broker pulled. It's this report, which shows the specific months that Ms. Fraser was late. And this goes to your accuracy argument, which is... What are you pointing to? I'm pointing to the credit report that's attached on page 20 of my moving brief in the footnote. Let me just get the specifics in it for Your Honor. No, I'm sorry. On page 22, docket 47-3. Was DMI providing the same information out of their credit reporting services? We don't know. We didn't... That's not the information in the record. We know how Equifax got the information, and the Equifax testimony says this is all DMI's fault. Now, to your accuracy component again, Your Honor. In this report, it specifically says Ms. Fraser is 90 days late in July of 20, November of 19, August of 19, et cetera, et cetera. No one argues that that's correct. Everyone knows that's false. That falsity prevented Plaintiff from obtaining the mortgage. That's how Equifax interpreted the DMI report. Right? The DMI report doesn't say that. That's how Equifax interpreted it, because the DMI report says that the loan was closed well before your suggestion that the report is suggesting that the loan was late. This is... The ACDV is the DMI report. Right. By putting this 3 here on the first page, the current status page, instead of the second page, the historical page, DMI is telling Equifax the 3, the 90 days, belongs in the more recent histories of 19, 18, 19, and 20. How... I mean, I guess, how could that possibly be if there's no loan? You know, which is, I think what Judge Feinerman said is you have to look at the whole report in context, and you can't be late on a loan that doesn't exist. This is common sense. Maybe Equifax messed up here, but you can't be late. I think that's what Judge Feinerman said. You can't be late on a loan that doesn't exist. But we just need to look at the report. Why are we doing conjecture? The report doesn't leave anything open. It says... Because we don't need to... I think Judge Feinerman is saying we don't look to the report to determine whether DMI's information was inaccurate. We look to the information that DMI reported to Equifax. If Equifax misreported it on the report, that's Equifax's problem, not DMI's problem. In other words, what Judge Feinerman says, I think, is you can't extrapolate from the Equifax report in error and assign the error to DMI. The error may be Equifax's argument. The error may be Equifax's fault. It's not DMI's fault. The low plaintiff presented expert testimony that providing the three on this current page is wrong. That creates a genuine issue of material fact. That's a different issue, I think. Then maybe I misunderstood your question. No, that's a different issue than looking to the Equifax report and saying based upon what Equifax did with the information provided by DMI, DMI's information was inaccurate. I don't think you can draw that conclusion. We can only look to—accuracy requires us to look at the credit report. That's the pitch. That's what triggers the dispute. It triggers the obligation. From there, we say, well, did DMI create these inaccuracies? How do we figure that out? We look to the only transmission. If the transmission has improper components of it, using the status improperly or putting the dashes in, which verifies the inaccurate lates, then there are questions of fact. This needs to go back, frankly, to allow us to present that evidence through Equifax. Plaintiffs shouldn't be punished for something that didn't follow the rules. Effectively, we're put in a position of we should have read the district judge's mind here and done this a different way. That may be what should have done, but the rules don't require it. It's an abuse of discretion to punish plaintiff for not doing it the way the district judge here thought it should have been done. I'd like to reserve the remaining time. That will be granted. You'll reserve the remainder of your time. Thank you, Mr. Zemel. Ms. Boutre? Thank you, Your Honor, and good morning. May it please the court. I wasn't planning on bringing this up here, but I'd like to point out to the court that the A12 credit report or the ACDV report that Mr. Zemel was pointing us to this morning is a TransUnion ACDV report, not an Equifax report. We talked a bunch about Equifax this morning, but we're talking about TransUnion. I'd like the court to make sure that when it looks at that, there's... The one that he was showing to me was Equifax. Equifax. A12 is what he was talking to. If he was talking to Equifax, the one that I thought he was talking to was TransUnion. Okay. Thank you, Your Honor. I have a TransUnion one as well, but... We had a bunch of TransUnion ones as well, so I wanted to make sure that we were all looking at the same one and that the alleged error or alleged whatever he was talking about was actually with Equifax, which is all that is on appeal today. Is the Code 3 in the wrong spot on the DMI report? Not that we're aware of, and this is something that is also very new. We could have had that... Wait, hold it, hold it. He said that it's in the current section of the DMI report, and it should be in the historical section. It should be on the back page instead of the front page. Is that right? No. How so? It should be where it is... It should be accurately reflected. So, it should be... She is historically late. Okay. So, according to you, it's neither... In answer to Judge Brennan's question, it's neither inaccurate nor misleading. Correct. Ms. Frazier has brought a single claim against DMI under the FCRA. It's a claim under 1681 S2B alleging that DMI failed to reasonably investigate purported inaccuracies in her credit report. This is the only claim that Frazier can bring against DMI because DMI is a furnisher of information under the FCRA. This is not a case about Frazier's credit reports. If Ms. Frazier is unhappy about the contents of her credit reports, she, as we discussed, has another lawsuit pending against Equifax, and she can, where she can and should bring, those complaints. The lawsuit is about whether DMI reasonably investigated the disputes that Frazier raised. Judge Feinerman correctly determined that Ms. Frazier can't get past Section 1681 S2B's requirement of making a threshold showing that DMI provided accurate information back to Equifax after its investigation. There's no discovery from Equifax or from Frazier's mortgage broker that will change this result. We respectfully request the court affirm the district court's judgment below. So I'd like to start first with the prima facie showing of inaccuracy. All of the circuit courts that have discussed or have considered this question of whether a furnisher has conducted a reasonable investigation have interpreted Section 1681 S2B to require a consumer to make that threshold showing that the information provided by a furnisher after its investigation was inaccurate. And that was the crux of DMI's summary judgment below and was the dispositive issue for the district court's summary judgment order. Frazier can't show that any of the information that DMI provided back to Equifax after its investigation of Frazier's disputes was inaccurate. So why isn't there a factual issue about the meaning of the dashes for the late payments, supposedly late payments, after the account was closed? Because we have sworn testimony from DMI that the dash means there's no reporting. There is no genuine issue of material fact that Frazier had submitted. There's no dispute as to the dash that it means what it says it means. The dispute below was whether the use of the dash was misleading. It's only on appeal that Frazier has said, no, the dash really doesn't mean what it says it means. And when we look at her briefs, what she's referring to are the credit reports themselves. And we know that we can't refer to the credit reports for the accuracy because those are credit reporting agency documents. Those aren't DMI documents. And then she refers to an affidavit that counsel submitted in support of his request to have a, it was Docket 47-1, it was a motion for a Rule 56 decontinuance, where he attached an affidavit that says that the plaintiff herself believes that the symbol means no change in reporting, not no reporting. And as this court has said, that the plaintiff's belief as to something isn't enough to create a genuine issue of material fact. And so there's no factual dispute as to what the dash actually means. So the dash means there's no reporting. And so the two factual inaccuracies, the meaning of the three and the dash, they are what they say they are. So there's no factual inaccuracies as to the information that DMI provided. Counsel, you all took the position in the district court that a deposition taken in another case could not be presented as evidence in this case, correct? Correct. Where did you get that idea? I think it was from the Federal Rule 32 and the fact that we weren't permitted to actually attend and cross-examine. So what? How is that any different from a witness's affidavit in opposing summary judgment? You're not allowed to sit in and edit or question, right? Correct. And I think that's not an issue on appeal. The deposition occurred and it honestly, again, as was made clear and as this court's questions proved, that Equifax deposition is not in the record and it wasn't used below. So we took that position. The district court overruled our objections and so it's not an issue on appeal. So in response to the ACDVs, DMI took the same action. We received three ACDVs from Equifax regarding Ms. Frazier. In the way that we received those ACDVs, there were two with a dispute code 106, which means that the consumer disputes her present or previous account status and the payment rating and account history. She also had the dispute code 001, which means she disputed that the account was not his or hers and requested that we provide or confirm the account ID. And in response to that, DMI took the same action and it provided a very robust investigation where it updated the account status of her loan to the code 13, meaning the loan was paid in full or it was closed. It updated the pay rate for the loan to a three, meaning that she was 90 days past due on the loan payments at the time the loan was paid in full. It updated the amount past due to zero. It updated the date of the account information, the date of the last payment, the date of the first delinquency. Importantly, it verified that the special comment code read AU, meaning that Frazier's loan was paid in full for less than the full amount of the balance. And as we've all discussed, we made sure that the response stated no reporting as represented by that dash in the account history section for all months after the date of that short sale. Below and on appeal, we've discussed that Frazier claims that that pay status of three and the use of the dash is inaccurate and she relies primarily on the credit reports, but we can't rely on those credit reports as a source of inaccuracy because both the statute and the case law interpreting the FCRA provide that it's the communication between the CRA and the furnisher itself that's the source of the furnisher's liability and it's the source of what the furnisher must investigate. Because the furnishers, we don't have any control over those credit reports. And the FCRA doesn't impose a duty on the furnisher to make sure that the account is actually reporting accurately on the credit report. In reality, what Frazier's arguments are, are arguments about whether Equifax accurately reported DMI's data on the credit report, not whether DMI accurately reported the information to Equifax. There's no record evidence to dispute the dash. She's admitted that she was 90 days past due when the account was closed. And so this isn't a situation where, for example, DMI was reporting that Frazier's account was still open or that she actually still owed money on her loan. That would be an example of where DMI was reporting inaccurate information. And so the plaintiff might be able to actually meet her prima facie burden. Counsel, you've asserted in your briefs that your client's procedures are, quote, beyond question. I don't know if that's correct or not, but what does it add to the defense in this case? Well, that's the second part of this. If she can meet her prima facie burden, we would actually get to the point of, did DMI conduct a reasonable investigation? It's our position that we don't need to get to that question. And Judge Feinerman found that we didn't have to get there because the plaintiff didn't meet her burden. And so we would ask that the court affirm Judge Feinerman on the basis that the plaintiff can't meet her burden. So if we assume that the plaintiff somehow does meet that prima facie burden and gets over that hump, which I'm going to make clear that I hope you don't, but if we actually do get there, the court can still affirm Judge Feinerman's decision based on the fact that the investigation that DMI did was reasonable beyond question. And this court's decision in the Wester case, and last year in the Woods case, and I would say that the Wester case is one of those cases that is cited around the country, is one of the main cases that sets forth this premise that while a defendant's investigation, whether it's reasonable is a factual question that's normally reserved for trial, summary judgment can and will be proper if the reasonableness of the defendant's procedures is beyond question. And in both Wester, in Woods, and there's two cases involving Ms. Deborah Walton that this court has decided in 2018 and 2019, and that brought back a little PTSD for me because I've litigated against Ms. Walton myself. But the court has found that when we look at what is in the information that the court, that the furnisher receives from the CRA in the ACDV, and that is what is the touchstone. What does the furnisher see from the ACDV? And then we see what the furnisher actually investigates. And if we see that the investigation is reasonable beyond question, as what this court has said, then summary judgment is appropriate. And when we compare what was in the ACDVs that DMI received, DMI investigated all of the disputed information in those ACDVs, and then it went above and beyond that. And so according to Wester, and Woods, and Walton, and all those other cases from this circuit and beyond, that is something that this court will find is beyond question. Those are procedures that are reasonable. So summary judgment, and our argument is that summary judgment could be affirmed on that basis because DMI went above and beyond to investigate this claim and to report, to verify that the data was correct. So that would be two bases to affirm Judge Feierman's decision. And to the extent that we're going to discuss any abuses of discretion in the summary judgment orders, they have to be arbitrary. The district court's decision has to be arbitrary, and the district court gave reasons for the decision to deny the request for the supplemental briefing, and to deny the request for the third-party discovery. There was nothing that the Equifax could say that was going to change the underlying testimony that DMI was going to provide. And the district court was very clear that the testimony it viewed, the testimony that Equifax was going to provide, it wasn't relevant to the underlying question of the factual accuracy of the testimony, of the factual records of DMI's internal investigation. And so it found that that testimony was going to be moot. And as to the records, or as to the mortgage broker, it viewed that testimony as going to the ultimate issue of damages, which would be allowed if and when we ever got there. And then the other reasoning offered for his testimony was his interpretation of the credit report. So that's doubly irrelevant, because interpretation of the credit report is, we're looking at the credit report again, how does that matter to what DMI's underlying investigation was, and DMI's underlying records. So she had to demonstrate that the district court, the decision was arbitrary, and that she was prejudiced. And for those reasons, she can't demonstrate anything, either of those things. So unless the court has any other questions, Dovan Mule would just respectfully request that the district court's decision be affirmed. Thank you, Ms. Buchheit. Thank you very much. Mr. Zemel, we've opposed a number of questions to you, so we'll give you three minutes for rebuttal. Oh, thank you, Your Honor. I was trying to think how quick I could be here. Just a few things, Your Honor. First, I did look at the oral argument transcripts to provide that to you, and it was at the July 18, 2020 transcript, at page 14, where the explanation I provided to the court was the Equifax case is a class action. So that is in the record. The court had that. I want to come back to your earlier question, which is, well, we don't have the Equifax transcript in the record here. What am I supposed to do with that? This is a strange case, where we were able to actually obtain the evidence in the parallel matter. But in a regular case, when plaintiff seeks to get the information and the court precludes it, usually plaintiff can't get it. And so to prove prejudice, all that a plaintiff can do is say, here is what would have been done. The standard shouldn't be flipped. Here, we did it below. In the motion to supplement, once we got the information, we said, hey, this information is really important. We really want to show it to you. And the court said, no, I don't want to hear it. And the basis at the motion to supplement that the court said no was, it has nothing to do with my ultimate decision. The ultimate issue in this case is, did DMI provide inaccurate information? If Equifax says DMI did provide inaccurate information, how could that be irrelevant to the key issue? We were deprived an opportunity to present the case early on in subpoenaing the third party and later on when we got it to supplement the record. I think it's important because there is a lot of talk about the three code. I've already articulated that the three code belongs in the historical section, the second page of the ACDB, and not in the current section, the first page. I want to talk just briefly about the cases that the court relied on to find the three code generally is the proper code. I attached the credit reports from the other cases at page 13 in my reply brief. We attached the BIBS credit report and we attached the Gross credit report. In those credit reports, on the images there, the status of 120 days goes on until the date closed. In Gross, the date was closed in April of 2018. Below that, in the historical section, it stops before that final date. The same exact thing happens in BIBS. In the third circuit in BIBS, which is a different issue because our case has historical monthly inaccuracies of specific months. In BIBS, it says the ratings key for each account provides data on Ms. BIBS' payment status up until March 2018, the date closed, but does not provide data beyond then. Our case clearly does. We have the report from the broker. The broker's report clearly says Ms. Fraser is 90 days late in January 19, August of 19, October of 19. This is factually incorrect. And what are you waving at us? For the record, what's the document number or exhibit number? It's the footnote on page 22 of my moving brief. Which is illegible. We attached the actual documents. Just in the footnote, I put the snippet in. So I believe it's A-37, but let me just take a look. We can probably find it from your footnotes in the district court record when you're waving at us. We can't follow that. I understand, Your Honor. I understand. Thank you, Mr. Zemo. Thank you, Ms. Bouchard. The case will be taken under advisement. Thank you. Thank you.